LAURA AMATO *vs.* LOUIS DESENTI.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued November 8th—decided December 7th, 1933.

*Louis Feinmark,* with whom was *Philip R. Shiff,* for the appellant (defendant).

*Alfonse C. Fasano,* with whom, on the brief, was *Serafino Ginnetti,* for the appellee (plaintiff).

BANKS, J. The plaintiff was riding on the rear seat of a motorcycle, operated by her brother, which collided with the rear of the defendant's automobile. The plaintiff claimed to have proved that while the motorcycle was proceeding westerly on the Derby Turnpike it followed the defendant's automobile for about a mile at a distance variously estimated at between fifty and seventy-five feet, both traveling about thirty-five miles per hour; that at or near an intersection with another highway the defendant, without giving any signal or other warning of his intention to do so, brought his car to a sudden stop; that on observing the speed of the defendant's car to be suddenly reduced, the operator of the motorcycle immediately applied his brakes and took other measures to stop it as quickly as possible, also swung the motorcycle first to the right and then to the left in an endeavor to clear the defendant's car, but it collided with the rear fender and the plaintiff was thrown off and injured. The defendant offered evidence that his automobile was equipped with a rear stop-signal light which worked automatically with the application of the brakes and showed red when the brakes were applied, and that as he started to slow up his car he signaled with his hand for on-coming traffic to pass him and brought his car to a gradual stop, traveling over seventy feet from the time he first applied his brakes until the car came to a stop.

The complaint alleged as a cause of the collision "carelessness and negligence of the defendant, in that he brought his automobile to a sudden and unexpected stop, without any signal of his intention." Regarding this allegation the charge stated the requirement of

the statute (General Statutes, § 1644) that each driver of a vehicle before slackening its speed, stopping, or backing, shall indicate by signal his intention to slacken his speed or to stop or back, and that failure to comply with it is negligence, and explained that it demands that signal be given "a sufficient length of time in advance of the act of slackening or stopping to be of use to those who might need to heed it." *Andrew* v. *White Bus Line Corporation,* 115 Conn. 464, 468, 161 Atl. 792. The court then proceeded to note the application of the rule to the claim of the defendant that he gave a signal both by hand and by a stop-light and charged, correctly, that if the jury found that he gave a hand signal such a length of time before he commenced to slacken speed preliminary to stopping as to afford reasonable notice of his intention, the statute was complied with.

As to the signal claimed to have been afforded by the stop-light, the charge was: "It is for you to determine whether a light of that kind is an adequate signal, when it is operating, to approaching traffic, bearing in mind that in order to be an adequate signal it must light up before the process of commencing to stop takes place; if you find from the testimony that the light only goes on when the actual process of stopping has been commenced, then it is not an adequate warning to approaching traffic within the meaning of the statute." This is assigned as error, complaint being directed to the expressions "process of commencing to stop" and "actual process of stopping has been commenced," the claim being that these might be construed to include acts preliminary to and preceding the actual slackening of speed. The process of stopping necessarily involves a slackening of speed and there would seem to be no substantial distinction between "the act of slackening or stopping" and the

"actual process of stopping". If there is one it is so fine that the jury, having been correctly instructed that the signal must be given a sufficient length of time in advance of the act of slackening or stopping, to be of use to those who might need to heed, could not have been misled by the subsequent use of the slightly differing phrases to which exception is taken.

Another specification in the complaint was that the defendant was "operating his automobile recklessly, having regard to the width, traffic and use of said highway, and so as to endanger the life and limb of the plaintiff." As to this, the charge stated that the allegation is practically in the words of the statute [General Statutes, § 1581(a)], which it quoted, and continued as follows: "Now, this matter of recklessness is not necessarily a matter of speed; it has to do with the manner in which one operates a motor vehicle on the public highway in view of the conditions which obtain. . . . In maneuvering one's car in the highway what one does must be judged in the light of all of the circumstances. Here the condition of traffic, the width of the road, the presence of an intersecting street, in so far as that exerted any influence upon the conduct of the parties, and, if you find that the defendant here did stop his car unexpectedly and quickly and that his doing so was negligent, and that he failed to give a proper signal or gave an inadequate signal, that sort of conduct in itself would be reckless misconduct within the meaning of this statute; so also would the failure to keep a proper lookout be reckless misconduct if it amounted to negligence. Any other conduct in which you may find the defendant was concerned may also be examined in the light of all the circumstances and surrounding conditions. If you find that it was negligent, as I have explained negligence

to you, then there was a violation of this statute and that is negligence."

Defendant takes exception to this portion of the charge in two respects, claiming, first, that it took from the jury the question of determining whether certain acts would constitute a violation of the statute by definitely charging that they would constitute such violation, and, second, that it erred in charging that ordinary negligence constituted a violation of the statute. The first claim is without merit. In stating that certain conduct of the defendant would constitute a violation of the statute the court qualified the statement in each instance so that it was made clear that the conduct referred to would be in violation of the statute only in case it was negligent conduct, as in the case of failing to give a "proper" signal, and in giving an "inadequate" one, and in failing to keep a proper lookout "if it amounted to negligence." As to the second claim, the charge does say, in substance, that the conduct referred to, if negligent, would be reckless misconduct within the meaning of the statute, and follows that with a statement that a violation of the statute "is negligence." A charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. Whatever obscurity or confusion of thought as to the distinction between negligence and reckless misconduct may be discovered in this portion of the charge, it remains true that the instruction as to violation of the statute presupposes a finding of negligence—surely a harmless proposition, and one which could not have misled the jury to the prejudice of the defendant.

The other assignments pertaining to the charge de-

velop no material error, and the requests were covered sufficiently for practical purposes.

Upon cross-examination of the plaintiff's brother, the operator of the motorcycle, he was asked if his sister said anything to him as they were riding along and he replied in the negative. He was then asked if she told him that he was driving dangerously close to the car in front of him, and upon objection the question was excluded. The plaintiff testified, upon cross-examination, that she said nothing to her brother until they were about ten feet from the automobile and then yelled "Look out," and was then asked if at any time she told her brother that it was a dangerous thing to be following that automobile at that rate of speed, and upon objection the question was excluded. The apparent purpose of these inquiries was to show that the plaintiff was guilty of contributory negligence in failing to warn her brother that he was driving in dangerous proximity to the defendant's automobile. Since both witnesses testified that the plaintiff said nothing at all to her brother, with the exception of her exclamation when they were within ten feet of the automobile, the defendant had the full benefit of their admission that no such warning was given. Any further cross-examination upon that point could only have had as its legitimate object some qualification of their testimony to the effect that some warning was given, which of course was not what the examiner was seeking. These rulings were not harmful to the defendant.

The plaintiff had testified that she had never before ridden on a motorcycle, and was then asked on cross-examination if she knew from past experience as to the manner in which her brother customarily operated his motorcycle, and if she did not know that he was a fast and reckless operator, and both questions were

excluded. It is apparent that the plaintiff could have had no knowledge as to her brother's operation of his motorcycle derived from past experience since she had never ridden on a motorcycle before. If she knew that he had driven recklessly on former occasions, such knowledge would not constitute contributory negligence, though it might be a circumstance imposing upon her a duty, such as of greater watchfulness, bearing upon the question of her exercise of reasonable care. *Marks* v. *Dorkin,* 105 Conn. 521, 524, 136 Atl. 83. The finding does not disclose that the defendant claimed to have proved any failure on the part of the plaintiff to exercise such slight degree of care as would be required of one occupying the position which she occupied, and, under the circumstances, we cannot consider these rulings as of sufficient importance, even if technically erroneous, to constitute reversible error.

There is no error.

In this opinion HAINES and AVERY, Js., concurred; MALTBIE, C. J., and HINMAN, J., dissented.