JOSE A. MORALES *v.* SAINT FRANCIS HOSPITAL AND MEDICAL CENTER
(4158)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued October 7—decision released December 30, 1986

*Ronald E. Cassidento,* with whom, on the brief, was *Eric Carlson,* for the appellant (plaintiff).

*Lois Tanzer,* for the appellee (defendant).

SPALLONE, J. The plaintiff is appealing from a judgment rendered by the trial court following a jury verdict for the defendant. The plaintiff claims the trial court committed error (1) in excluding evidence relevant to the issue of the defendant's negligence, and (2) in refusing to charge the jury as requested.

The jury could reasonably have found the following facts. On August 11, 1978, a patient, N, came to the defendant, St. Francis Hospital and Medical Center, complaining of hearing voices. N was placed in restraints by hospital personnel and was examined by an emergency room physician. This physician admitted N and sought his transfer to a psychiatric hospital. On August 12, 1978, at about 1 a.m., it was discovered that N had managed to free himself from the restraints and had escaped from the hospital. Hospital security was notified.

Later that morning, the plaintiff, a police officer, and a fellow officer received a call from the police dispatcher requesting them to proceed to a pharmacy in Hartford in order to investigate a claim of disturbance. Upon their arrival, the officers observed N in the pharmacy waving about an umbrella and a cane and knocking articles off the shelves. The plaintiff radioed for an ambulance which arrived at the scene shortly thereafter, along with two attendants from Trinity Ambulance Service, Inc. (Trinity). A struggle ensued involving, at various times, N, the two police officers and the ambulance attendants. Under the direction of the plaintiff, the officers and the ambulance attendants attempted to place N on a stretcher and fasten him into a restraining device that was secured by utilizing zipper closures. During the struggle that followed, the plaintiff was struck in the eye by the broken end of the umbrella that N was holding in his hand. As a result, he suffered severe and permanent injuries to one of his eyes. N was subsequently readmitted to the defendant hospital.

The plaintiff brought separate actions against the defendant and Trinity. The cases were consolidated in the trial court and tried together. At the close of the plaintiff's case, the trial court granted Trinity's motion for a directed verdict, but denied the defendant's motion for a directed verdict. The trial then proceeded against the defendant only, and the jury returned a general verdict in the defendant's favor. The plaintiff then filed separate appeals from the judgments for Trinity and for the defendant. Although the appeals were not combined in this court, they were argued at the same time.

In his first claim, the plaintiff contends that the trial court erred when it refused to admit into evidence the defendant's record of N's readmission to the defendant hospital on August 12, 1978, following the struggle in the pharmacy. (The exhibit was marked "Y" for identification and is hereinafter referred to as "exhibit Y.") The record of N's original admission on August 11, 1978, was admitted and marked as exhibit X. The plaintiff claimed that exhibit Y was also admissible because it contained information regarding the events surrounding N's original admission on August 11. Specifically, exhibit Y contained a notation by one of the hospital physicians that "[N] was seen last a.m. and described in MD note as violently psychotic." Although the "MD note" referred to was part of exhibit X, the note actually stated that N was "schizophrenic" rather than "violently psychotic." The defendant objected to the offer of exhibit Y on the ground that any information contained in this exhibit about the events of the previous admission was only a summary or paraphrasing of the previous admission records rather than information based on first-hand knowledge of the events of the previous evening.[1] After hearing argument by coun-

[1] The physician who had written the pertinent parts of exhibit Y had not been on duty when N was first admitted on August 11, 1978.

sel outside the presence of the jury, the trial court ruled that exhibit Y was inadmissible because the information contained in the exhibit merely paraphrased what was contained in exhibit X, "whereas the best evidence rule says that the main event of August 11 is the best evidence as recorded on that date." The court also noted that General Statutes § 4-104, regarding inspection of hospital records, did not render exhibit Y admissible, when, as here, the court found that it was otherwise inadmissible under the rules of evidence.

We find that the trial court properly refused to admit exhibit Y. Our Supreme Court has defined the best evidence rule as follows: " '[I]n proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent.' " *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 10, 513 A.2d 1218 (1986), quoting C. McCormick, Evidence (3d Ed.) § 230. The best evidence rule typically applies when attempting to prove the contents of " 'instruments such as deeds, wills or contracts, where a slight variation of words may mean a great difference in rights.' " *Brookfield* v. *Candlewood Shores Estates, Inc.,* supra, 10–11, quoting C. McCormick, supra, § 231. The " 'basic premise justifying the rule is the central position which the written word occupies in the law.' " *Brookfield* v. *Candlewood Shores Estates, Inc.,* supra, 10, quoting C. McCormick, supra.

While the present case is somewhat unusual, it falls within the ambit of the rule since "written words"— here, the characterization of N's condition on the physician's note in exhibit X—were relevant to important issues of this case, i.e., N's condition on August 11 and the defendant's knowledge of that condition. Thus, because exhibit X, already introduced into evidence,

was the best evidence of the August 11 physician's note, the trial court properly excluded exhibit Y under the best evidence rule.[2]

The plaintiff now asserts that he attempted to introduce exhibit Y not to prove the terms of exhibit X, but to demonstrate that the defendant could have concluded from the contents of exhibit X that N posed a significant threat to the plaintiff. This claim is apparently based on the assumption that the physician preparing exhibit Y was rendering a medical opinion rather than summarizing the earlier report and that such an opinion would be admissible under the hospital and business records exception to the hearsay rule. General Statutes §§ 4-104, 52-180; *Kelly* v. *Sheehan,* 158 Conn. 281, 284–86, 259 A.2d 605 (1969). We have examined the trial transcript of the argument concerning the admission of exhibit Y and have found no indication that the plaintiff raised this argument to the trial court. As such, we will not consider this claim. Practice Book § 288; *Mays* v. *Mays,* 193 Conn. 261, 268, 476 A.2d 562 (1984).

A few days after the trial judge had sustained the defendant's objection to the offer of exhibit Y, the plaintiff again attempted to introduce exhibit Y in order to show that exhibit X had been altered. The plaintiff argued that because the physician preparing exhibit Y characterized exhibit X as stating that N was "violently psychotic," whereas exhibit X had stated only that N was "schizophrenic," exhibit Y was evidence that exhibit X had been tampered. The plaintiff argued that the Supreme Court held such evidence admissible in

[2] The plaintiff was, of course, free to introduce other evidence, such as the testimony of the physicians who admitted N, to establish what the defendant knew or should have known about N's condition on August 11. Insofar as the plaintiff attempted to prove the defendant's knowledge of N's condition from the physician's note in exhibit X, the plaintiff was obliged under the best evidence rule to rely on exhibit X rather than the paraphrasing of that note in exhibit Y.

*Pisel* v. *Stamford Hospital,* 180 Conn. 314, 320, 430 A.2d 1 (1980). The defendant objected, arguing that the claim was purely speculative and that any evidence of tampering should be established by the testimony of the doctors who prepared the documents rather than an otherwise inadmissible document. The trial court sustained the objection.

We agree that the court correctly refused to allow exhibit Y as evidence that exhibit X was altered. This claim does not have the hearsay problems associated with the previous offer since the offer was presumably made not to demonstrate the truth of the contents of exhibit Y but to show that exhibit X was not the true admission record of N on August 11. Nevertheless, the trial court could properly exclude the document on the grounds that the plaintiff had failed to lay a proper foundation for proof of alteration and that the probative value of the exhibit was outweighed by the confusion, time and prejudice. See *State* v. *Vennard,* 159 Conn. 385, 392, 270 A.2d 837 (1970), cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1971); *State* v. *Aspinall,* 6 Conn. App. 546, 554, 506 A.2d 1063 (1986). In connection with this claim, we note (1) that the alteration issue was raised belatedly, after exhibit Y had been found to be inadmissible on other grounds, (2) that the issue was never raised in the pleadings and the defendant had no reasonable ground to anticipate the issue, (3) that the plaintiff did not call the doctor who prepared exhibit Y, who could have been questioned and cross-examined regarding the circumstances under which he wrote the document, (4) that the plaintiff failed to question the physician who prepared exhibit X about its possible alteration, although he called this physician as a witness and questioned him on other grounds, and (5) that the alteration claim was in fact a side issue of a more central issue, i.e., the defendant's knowledge of N's condition on August 11,

1978, which issue could be explored more fully through other evidence. Under these circumstances, the trial court had ample grounds for excluding the exhibit. The trial court has wide discretion in such evidentiary rulings; *Turgeon* v. *Turgeon,* 190 Conn. 269, 273, 460 A.2d 1260 (1983); *State* v. *Aspinall,* supra; and we find no abuse of discretion in the court's exclusion of exhibit Y.

The case of *Pisel* v. *Stamford Hospital,* supra, cited by the plaintiff, does not support his position. In *Pisel,* the plaintiff established that hospital records had been altered following the plaintiff's injury. Our Supreme Court, in discussing the trial court action in the case, stated: "The trial court instructed the jury without objection that they could consider the substitution of the records as a circumstance indicating the defendant's consciousness of negligence." Id., 320. The Supreme Court did not address the propriety of this instruction. Even if the Supreme Court had explicitly approved this instruction, however, the case would not support the plaintiff. At most, the case supports the proposition that once alteration is proved, the jury may consider that fact as an indication of the defendant's consciousness of negligence; it would not support the plaintiff's contention that, under the circumstances of this case, his bare allegation of alteration permits the introduction of otherwise inadmissible evidence.

Our review of the instructions given to the jury by the trial court fails to support the plaintiff's claims of errors in the charge. Although the court did not charge in the exact language, "[e]rror cannot be predicated on a failure to adopt the particular language of a request to charge where the matter is adequately and fairly covered in the charge." *Nally* v. *Charbonneau,* 169 Conn. 50, 55, 362 A.2d 494 (1975). A charge must be read as a whole; the test is not whether it is exhaustive, letter perfect or technically accurate; *Hoadley* v. *University of Hartford,* 176 Conn. 669, 674, 410 A.2d

472 (1979); but whether the charge as a whole fairly presented the case so that no injustice was done. *Kosko v. Kohler,* 176 Conn. 383, 390–91; 407 A.2d 1009 (1978). We hold that the charge in this case complied with the principles expressed above and justly and fairly apprised the jury of the law to be applied in this case.

There is no error.

In this opinion the other judges concurred.